JOHN R. GRUBB, INC., Clarke Interests, Inc., and Darwin T. Lynner, Inc., Appellants,

v.

IOWA HOUSING FINANCE AUTHORITY, Appellee.

No. 2–60119.

Supreme Court of Iowa.

May 25, 1977.

Charles F. Wasker and Louis R. Hockenberg, Wasker, Sullivan, Wheatcraft & Ward, Des Moines, for appellants.

Herschel G. Langdon, David W. Belin, Robert H. Helmick, and Curt L. Sytsma, Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, and Robert A. Fippinger, Hawkins, Delafield & Wood, New York City, for appellee.

REYNOLDSON, Justice.

Plaintiffs brought an equity action for declaratory decree holding the Iowa Housing Finance Authority Act (Ch. 220, The Code, 1977) to be in violation of the Iowa Constitution. They now appeal from trial court's decree finding the enactment to be constitutional. We affirm.

The essential facts are not disputed. Plaintiffs John R. Grubb, Inc., Clarke Interests, Inc., and Darwin T. Lynner, Inc., Iowa corporations having their principal places of business in Polk County, Iowa, are all engaged in the business of owning, leasing, investing in, and constructing housing for Iowa residents. Each plaintiff is an Iowa taxpayer who will be adversely affected and irreparably injured by any unconstitutional expenditure of state funds.

Defendant Iowa Housing Finance Authority ("Authority") is a public instrumentality and agency of the state created by 66th G.A., Ch. 138 (1975). See Ch. 220, The Code, 1977. It was established to "undertake programs which assist in attainment of adequate housing for low or moderate income families, elderly families, families which include one or more persons who are handicapped or disabled, and the Iowa homesteading program." The Authority's powers are exercised by a nine-member board drawn from stated segments of society by governor's appointment subject to approval of two-thirds of the senate membership. § 220.2, The Code. Provision is made for appointment, powers and duties of an executive director. § 220.6, The Code.

Among its numerous powers, the Authority may make mortgage loans to housing sponsors to provide long-term financing for the purchase or rehabilitation of adequate housing for those families and persons above indicated, where necessary financing cannot be obtained from other sources, upon terms and conditions the sponsor could

reasonably be expected to fulfill. The Act provides the Authority "shall make and execute contracts with mortgage lenders for the servicing of mortgage loans made under this section." § 220.12, The Code.

This enactment additionally permits the Authority, through financing programs, to encourage and assist transfers of housing to the above families and persons through lease-purchase agreements. § 220.13, The Code. The "Iowa homesteading program" for the rehabilitation of dilapidated and deteriorating housing is a part of the Act, § 220.14, The Code, as well as a grant of authority to participate in federal housing act programs, § 220.15, The Code.

For these and other purposes, the Authority is authorized to issue "housing assistance fund notes," § 220.19, The Code; make loans to mortgage lenders, § 220.20, The Code; purchase mortgage loans, § 220.-21, The Code; and issue negotiable bonds, § 220.26, The Code.

April 15, 1976, the Authority adopted its Loan to Lenders Home Loan Bond Resolution, which provides for the issuance and marketing of bonds by the Authority. Bond proceeds will be loaned by the Authority to "Mortgage Lenders." They will in turn make mortgage loans for housing purposes at lower-than-market interest rates to persons who qualify as "low or moderate income families" under the Act.

May 11, 1976, plaintiffs brought this equity action. Their petition alleged the Iowa Housing Finance Authority Act was "unconstitutional, any and all resolutions adopted by the Defendant are illegal, and any and all bonds issued or to be issued by the Defendant are void." Plaintiffs prayed for a declaratory judgment decreeing the Act unconstitutional, all resolutions illegal, and all bonds void. They further sought a permanent injunction restraining defendant from issuing bonds, pledging its or the state's assets, making loans, and acquiring interests in real estate.

Defendant's answer admitted the factual allegations of the petition, but denied allegations of unconstitutionality. Defendants prayed for a declaratory judgment decree-ing the Act to be constitutional and the bonds issued thereunder to be valid.

November 16, 1976, trial court entered its decree. It rejected all the constitutional challenges and decreed "that any and all bonds issued or to be issued pursuant thereto by the defendant Iowa Housing Finance Authority are valid and binding according to their terms."

Plaintiffs, appealing, raise seven issues which are discussed in divisions II through VIII, infra.

I. We first briefly examine the general principles which guide us in considering this type of appeal.

Our review of this equity case is *de novo*. Rule 334, Rules of Civil Procedure; *Elkader Production Credit Ass'n v. Eulberg*, 251 N.W.2d 234, 236 (Iowa 1977); *Dilley v. City of Des Moines*, 247 N.W.2d 187, 190 (Iowa 1976). We give weight to trial court's findings of fact, but are not bound by them. Rule 344(f)(7), R.C.P.; *Tamm, Inc. v. Pildis*, 249 N.W.2d 823, 828 (Iowa 1976).

Our rules which apply when a statute is under constitutional attack were most recently summarized in *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977):

"All presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required. The legislature may pass any kind of legislation it sees fit so long as it does not infringe the state or federal constitutions. Courts do not pass on the policy, wisdom, advisability or justice of a statute. The remedy for those who contend legislation which is within constitutional bounds is unwise or oppressive is with the legislature. * * * Plaintiffs have the burden to demonstrate beyond a reasonable doubt the act violates the constitutional provision invoked and to point out with particularity the details of the alleged invalidity. To sustain this burden plaintiffs must negative every reasonable basis which may support the statute. (citation) Every reasonable doubt is re-

solved in favor of constitutionality. (citation)"

With these principles in mind, we turn to the specific constitutional issues raised in this appeal.

II. Plaintiffs contend the Act violates article III, section 31, Iowa Constitution, because it permits the use of public money for private purposes.

In pertinent part, article III, section 31, provides:

"[N]o public money or property shall be appropriated for local, or private purposes, unless such appropriation, compensation, or claim, be allowed by two-thirds of the members elected to each branch of the General Assembly."

Plaintiffs correctly point out there is no record of a two-thirds vote on this enactment. Thus we necessarily must resolve the issue whether the actual purposes of the Act are public or private.

Section 220.3, The Code, 1977, sets out specific "legislative findings." These include, *inter alia*, findings of a shortage of safe and sanitary housing available to low or moderate income families; the shortage is conducive to disease, crime, environmental decline and poverty, depreciated values, impaired investments, reduced capacity to pay taxes, population maladjustments adding costs to communities to provide basic services elsewhere; a recurrent shortage of private funds; failure of private enterprise to correct the conditions; and the necessity of a stable supply of adequate funds "to encourage new housing and the rehabilitation of existing housing in an orderly and sustained manner and to reduce the problems described in this section." At § 220.-3(1) and (11) the legislature specifically declared the establishment of the Authority and the purposes of the Act were public purposes "for the benefit of the people of the State of Iowa."

■ Although we are not required to treat a legislative declaration of purpose as final, binding or conclusive, *Simpson v. Low-Rent Housing Agency of Mount Ayr*, 224 N.W.2d 624, 627 (Iowa 1974), we will

not find absence of public purpose except where such absence is so clear "as to be perceptible by every mind at first blush." *Dickinson v. Porter*, 240 Iowa 393, 417, 35 N.W.2d 66, 80 (1948).

■ An examination of *Dickinson*, supra, and decisions from other jurisdictions discloses a plain judicial intent to permit the concept of "public purpose" to have that flexibility and expansive scope required to meet the challenges of increasingly complex social, economic, and technological conditions. See, e. g., *DeArmond v. Alaska State Development Corporation*, 376 P.2d 717, 721 (Alas.1962); *Minnesota Housing Finance Agency v. Hatfield*, 297 Minn. 155, 168, 210 N.W.2d 298, 306 (1973); *Johnson v. Pennsylvania Housing Finance Agency*, 453 Pa. 329, 337, 309 A.2d 528, 533 (1973); *Opinion to the Governor*, 112 R.I. 151, 154, 308 A.2d 809, 811 (1973).

In asserting the Act contemplates expenditure of funds for private and not public purposes, plaintiffs raise three principal points.

■ Plaintiffs contend § 220.23 violates the above constitutional provision because it empowers the Authority, without substantial guidelines or supervision, to "forgive or forbear all or parts of a mortgage loan or a loan to a mortgage lender * * *." This power, they assert, allows the Authority to make gifts to individuals, clearly a private purpose.

We do not agree because we perceive the power to forgive all or a portion of a loan as a necessary adjunct of the power to make loans, along with the authority to renegotiate loans, waive defaults or consent to a modification of terms. Such power may be of benefit to the Authority just as it sometimes benefits a private lender. For example, the Authority may wish to forgive part of a loan to a financially troubled debtor in order to permit the borrower to avoid bankruptcy and thereby obtain at least part payment. This would serve the public interest.

■ Second, plaintiffs argue the Act is merely duplicative of present state and fed-

eral programs and therefore serves no public purpose of its own. But the plaintiffs offer no evidence this is true, and it flies in the face of specific legislative findings that there is a shortage of housing available to low and moderate income families. We cannot say this finding is clearly unreasonable and arbitrary.

Further, the State Housing Report identifies major housing problems in Iowa, including low vacancy rates, scarcity of mortgage money, and inadequate housing for the poor, elderly and handicapped citizens. Over plaintiffs' objections, the court allowed into evidence this report and other documents the defendant offered below. Plaintiffs do not assign the court's ruling as a ground for reversal, and in fact rely on some of the offered information in their brief. The record in this case does not support plaintiffs' assertion this Act is duplicative of other state and federal legislation.

■ Finally, plaintiffs argue the contemplated expenditures are not for public purposes because § 220.4 permits benefits for all persons including high-income families. We do not so interpret that section, which merely states a broad set of guiding principles, including cooperation with local government units and housing agencies, the necessity of a local contributing effort, and supplying technical assistance. These principles provide preferences in program planning, including those which encourage home ownership by families of low or moderate income and housing units designed to serve elderly families, the disabled and handicapped, and lower and very low income families.

It is true, as plaintiffs contend, that while "elderly families" by definition must be those of low or moderate income, § 220.1(5), The Code, there is no such economic distinction relating to the disabled or handicapped. However, "disabled" is defined to mean those unable to engage in any substantial gainful employment by reason of a medically determinable physical or mental impairment. § 220.1(7), The Code. "Handicapped" are those having a mental or physical impairment expected to be of long and continued duration, substantially impeding the ability to live independently, and which is of such a nature that the ability to live independently could be improved by more suitable housing conditions. § 220.1(8), The Code. We judicially note many such persons are of low or moderate income, and most have special housing needs not ordinarily available in the market place.

■ Plaintiffs assert the only restriction placed on the Authority is the § 220.8 requirement that at least 30 percent of all housing units be designed for and directed toward the elderly, handicapped or very low income families. But this does not mean the remaining 70 percent of housing units will go to high income families. Other provisions of the Act reveal the balance of the units should go to "families of low or moderate income." See, e. g., §§ 220.4(6)(b); 220.12(5); 220.13; 220.18(2), The Code. By definition, "low or moderate income families" are those which cannot afford to pay enough to cause private enterprise in their locality to build an adequate supply of decent, safe and sanitary dwellings for their use. § 220.1(2), The Code.

The only provision for housing economic groups other than those above named relates to an overall plan to develop new or rehabilitated communities or neighborhoods where housing low or moderate income families is the primary goal. § 220.1(19), The Code. This is consistent with the guiding principle that preference should be given to certain programs including "[t]hose which treat housing problems in the context of the total needs of individuals and communities, recognizing that individuals may have other problems and needs closely related to their need for adequate housing, and that the development of isolated housing units without regard for neighborhood and community development tends to create undesirable consequences." § 220.4(6)(a), The Code. This built-in flexibility is reasonably designed by the legislature to promote the goal of adequate housing for the designated beneficiaries of the enactment, and does not convert a public purpose into an unconstitu-

tional private purpose. See *Massachusetts Housing Finance Agency v. New England Merchants National Bank of Boston*, 356 Mass. 202, 212, 249 N.E.2d 599, 606 (1969); *Minnesota Housing Finance Agency v. Hatfield*, supra, 297 Minn. at 168, 210 N.W.2d at 307.

For the proposition the Act promotes a private purpose, plaintiffs cite *In re Advisory Opinion*, 380 Mich. 554, 158 N.W.2d 416 (1968) and *Shotts v. Hugh*, 551 P.2d 252 (Okla.1976). The latter case involved the device of a statutory public trust "for furtherance of public functions." The trust there involved was designed to promote housing generally without restriction as to beneficiaries and without a legislative determination of need to relieve a definite housing shortage. Thus *Shotts* is clearly distinguishable from the case before us. The Michigan court's rationale is more obscure, but appears to turn on the conclusion portions of the Michigan act were related to a private purpose because they were not designed "to assist certain persons, *per se*," but to "fill a gap in the housing market." *In re Advisory Opinion*, supra, 380 Mich. at 582, 158 N.W.2d at 429.

The overwhelming majority of jurisdictions considering similar legislation have had little difficulty in finding a public purpose served by aiding very low to middle income families in securing adequate housing which would otherwise be beyond their reach. See, e. g., *Walker v. Alaska State Mortgage Association*, 416 P.2d 245, 253 (Alas.1966); *Cremer v. Peoria Housing Authority*, 399 Ill. 579, 588, 78 N.E.2d 276, 283 (1948); *Maine State Housing Auth. v. Depositors Trust Co.*, 278 A.2d 699, 705 (Me. 1971); *Massachusetts Housing Finance Agency v. New England Merchants National Bank of Boston*, supra, 356 Mass. at 212, 249 N.E.2d at 606; *Minnesota Housing Finance Agency v. Hatfield*, supra, 297 Minn. at 168, 210 N.W.2d at 306; *New Jersey Mortgage Finance Agency v. McCrane*, 56 N.J. 414, 421, 267 A.2d 24, 27 (1970); *Opinion to the Governor*, 112 R.I. 151, 155–156, 308 A.2d 809, 810–812 (1973); *Vermont Home Mtg. Credit Agency v. Montpelier Nat'l Bank*, 128 Vt. 272, 277–278, 262 A.2d 445, 449 (1970); *State ex rel. West Virginia Housing Dev. Fund v. Copenhaver*, 153 W.Va. 636, 646–648, 171 S.E.2d 545, 551–552 (1969); *State ex rel. Warren v. Nusbaum*, 59 Wis.2d 391, 420–423, 208 N.W.2d 780, 796–799 (1973).

We are convinced proper goals for any organized society might include assistance in securing decent and adequate housing for the elderly, handicapped, disabled, and those otherwise unable to afford it. The legislation before us conforms to that goal and will carry forward a constitutional public purpose.

III. Plaintiffs further assert the Act violates article I, section 6, Iowa Constitution, which prohibits the general assembly from granting "to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." They argue the Act denies equal protection by granting to certain citizens privileges and immunities not available on the same terms to all citizens.

■ Our decisions have made plain the above constitutional provision does not require that all laws shall apply alike to all citizens of the state. It is sufficient if an enactment applies to all members of a class, providing the classification is not purely arbitrary but rests upon a reasonable basis. *Green v. City of Mt. Pleasant*, 256 Iowa 1184, 1199, 131 N.W.2d 5, 15–16 (1964); see *Keasling v. Thompson*, 217 N.W.2d 687, 689 (Iowa 1974).

■ One who challenges a statute on this constitutional ground must negate every conceivable basis which may support the classification, and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest. *Avery v. Peterson*, 243 N.W.2d 630, 633 (Iowa 1976); *Richards v. City of Muscatine*, 237 N.W.2d 48, 61 (Iowa 1975).

■ A law may serve the public interest although it benefits certain individuals or classes more than others. *Richards v. City of Muscatine*, supra, 237 N.W.2d at 60; *Dic-*

*kinson v. Porter*, supra, 240 Iowa at 416, 35 N.W.2d at 80. We thus turn to an examination of this Act to determine if it incorporates patently arbitrary classifications or if plaintiffs have negated every conceivable basis which might support the classifications. Of course, we have already held the Act advances a valid public purpose.

Plaintiffs argue inclusion of "elderly families" as beneficiaries of the Act does not reasonably relate to its purpose because many old people may be wealthy and well-housed. This assertion ignores the definition of "elderly families" as those with low or moderate income, § 220.1(5), The Code. Thus this classification is reasonably related to the public purpose of the Act, to provide safe and adequate housing for low and moderate income families.

We reach the same conclusion regarding plaintiffs' contention the "disabled" and "handicapped" classifications are arbitrary because these persons may be wealthy and not in need of housing. The definitions of those terms set out in division II plainly indicate the overwhelming majority of these persons will be in the low or moderate income group. We have already noted their need for specialized housing not ordinarily available in the market place. Plaintiffs have not carried their burden to show this classification is unrelated to the purposes of the Act.

Plaintiffs also assert the Act primarily benefits investors, builders and tenants. They urge the low interest loans to "housing sponsors" are a privilege not available to other builders, and furnishing housing to some persons "denies equal protection by discriminating against persons who do not qualify for such benefits." However, a statutory scheme which advances a public purpose will not be invalidated because it benefits certain individuals or classes more than others. Necessary incidental benefits which may accrue to housing sponsors or investors will not void this legislation. See *Richards v. City of Muscatine*, supra, 237 N.W.2d at 59–60; *Suber v. Alaska State Bond Committee*, 414 P.2d 546, 552 (Alas.1966).

We find no merit in these grounds plaintiffs advance for reversal.

IV. Our holding in the last division disposes of plaintiffs' contention this legislation violates article III, section 30, Iowa Constitution, which provides, "where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State * * *."

Our holding in *Richards v. City of Muscatine*, supra, 237 N.W.2d at 61, applies here:

"This court has said of § 30 of article III as well as of § 6 of article I, 'If there is any reasonable ground for the classifications in this law and it operates equally upon all within the same class, there is * * * no violation of [§ 30 of article III],' *Dickinson v. Porter*, supra, 240 Iowa at 400, 35 N.W.2d at 72. We have already concluded that a reasonable basis exists for the classification in § 403.19. We find no invalidity here."

The reach of the Act is not limited by geographical or political barriers. While areas with substandard housing conditions may be localized, the legislature could have logically concluded such conditions transcend geographic and governmental lines. The by-products of bad housing are not confined to the areas which breed them but permeate throughout the state. *State ex rel. Warren v. Nusbaum*, supra, 59 Wis.2d at 422, 208 N.W.2d at 799–800 (1973); see *Johnson v. Pennsylvania Housing Finance Agency*, supra, 453 Pa. at 337–338, 309 A.2d at 537–538.

This is not special legislation, but a general enactment. The classifications embodied in the Act are reasonable. The law operates equally upon all within each class. We find no violation of article III, section 30, Iowa Constitution.

V. Plaintiffs also assert this legislation violates article I, section 9, Iowa Constitution, which relevantly provides "no person shall be deprived of life, liberty, or property, without due process of law." They argue that as Iowa taxpayers they are injured by expenditure of state funds under the Act

when there is no rational relationship between its provisions and the public health, safety and welfare it purports to serve. Specifically, plaintiffs argue there is no showing of any rational relationship between conditions of old age, handicap, or disability and the housing shortage to be alleviated by this legislation.

■ Due process clauses do not limit the exercise of the state's police power unless the legislation is "an arbitrary, unreasonable, or improper use of such power." *Green v. Shama*, 217 N.W.2d 547, 555 (Iowa 1974). In *Richards v. City of Muscatine*, supra, 237 N.W.2d at 57, we said we must uphold the urban renewal law (there challenged on due process grounds) "unless we can say no rational basis exists for believing that those sections further the public health, safety, morality, and general welfare."

■ Our holding in division II that this Act serves a valid public purpose is determinative of this issue. See *Frost v. State*, 172 N.W.2d 575, 579 (Iowa 1969). Plaintiffs' arguments avoid the specific legislative findings set out in § 220.3, The Code. The Act is plainly designed to assist in providing housing for low and moderate income families, §§ 220.1(19); 220.2(1); 220.3(1) and (3). The elderly who will be aided must meet this income classification. § 220.1(5). We have already judicially noted the special housing needs of the handicapped and disabled, who additionally must meet strict statutory qualifications. §§ 220.1(7) and (8).

We cannot say there is no rational basis for believing these statutory provisions will further the goals sought to be achieved by the Act.

VI. Plaintiffs contend bonds to be issued by the Authority constitute indebtedness contracted by or on behalf of the state without the referendum elections required by article VII, section 5, Iowa Constitution.

■ We hold a "debt," in the context of the above Iowa constitutional provision, arises only where the state itself is under a legally enforceable obligation. *State ex rel.*

*Warren v. Nusbaum*, supra, 59 Wis.2d at 428, 208 N.W.2d at 803; see *Ohio Casualty Ins. Co. v. Galvin*, 222 Iowa 670, 675, 269 N.W. 254, 257 (1936).

Early in this opinion, we noted the Iowa Housing Finance Authority is a "public instrumentality and agency of the State." § 220.2, The Code. But it is a corporate entity, separate and distinct from the state, with the power to sue and be sued in its own name, make by-laws for its management, contract, issue bonds and notes, and exercise all those general powers specified in § 220.5, The Code.

One asserting that as a state agency the Authority's bonds and notes are a debt of the state must first reckon with the language of the Act itself which provides:

"2. Bonds and notes issued by the authority are payable solely and only out of the moneys, assets, or revenues of the authority, and as provided in the agreement with bondholders or noteholders pledging any particular moneys, assets or revenues. Bonds or notes are not an obligation of this state or any political subdivision of this state other than the authority within the meaning of any constitutional or statutory debt limitations, but are special obligations of the authority payable solely and only from the sources provided in this chapter, and the authority may not pledge the credit or taxing power of this state or any political subdivision of this state other than the authority, or make its debts payable out of any moneys except those of the authority."—220.26(2), The Code.

Section 220.26(4)(a) additionally requires the bonds to "[s]tate the date and series of the issue, be consecutively numbered, and state on their face that they are payable both as to principal and interest solely out of the assets of the authority and do not constitute an indebtedness of this state or any political subdivision of this state other than the authority within the meaning of any constitutional or statutory debt limit."

■ The above legislative declarations are determinative of the issue plaintiffs

raise here. Our conclusion is reinforced by analogous decisions from Iowa and other jurisdictions. *Brack v. Mossman,* 170 N.W.2d 416, 424 (Iowa 1969) ("We hold the project under review did not create a debt against the State. The enabling statute so provides; the bonds contain such a provision; there is no alternative procedure by which the State could be compelled to pay."); *Iowa Hotel Ass'n v. State Bd. of Regents,* 253 Iowa 870, 878, 114 N.W.2d 539, 544 (1962) ("When the enabling act specifically negatives any charge against the state, there is no state debt within the meaning of the Constitution."); see *Farrell v. State Bd. of Regents,* 179 N.W.2d 533, 542–544 (Iowa 1970); *California Housing Finance Agency v. Elliott,* 17 Cal.3d 575, 131 Cal.Rptr. 361, 369, 551 P.2d 1193, 1201 (1976); *Johnson v. Pennsylvania Housing Finance Agency,* supra, 453 Pa. at 342, 309 A.2d at 535 (1973); *Martin v. North Carolina Housing Corporation,* 277 N.C. 29, 53–54, 175 S.E.2d 665, 679 (1970).

■ VII. Raising a related issue, plaintiffs claim the Act unconstitutionally pledges the state's credit, in violation of article VII, section 1:

> "*Credit not to be loaned.* Section 1. The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the State shall never assume, or become responsible for, the debts or liabilities of any individual, association, or corporation, unless incurred in time of war for the benefit of the State."

This constitutional provision withholds from the state all power or function of suretyship. *Grout v. Kendall,* 195 Iowa 467, 473, 192 N.W. 529, 531 (1923). See *Richards v. City of Muscatine,* supra, 237 N.W.2d at 62; *Green v. City of Mount Pleasant,* supra, 256 Iowa at 1197, 131 N.W.2d at 14.

■ We find nothing in the language of this Act which would posture the state as a surety. The language of § 220.26(2), supra, that "the authority may not pledge the credit or taxing power of this state" expressly negatives any such relationship.

But plaintiffs argue the Act pledges the state's credit by creating a moral obligation. They point to § 220.27(4) which requires the chairman of the Authority to annually certify to the governor any sum required to restore each bond reserve fund to the fund requirements and which states the governor "may submit" to the legislature a budget which includes such sum. This statute then provides, "Any sums appropriated by the general assembly and paid to the authority pursuant to this section shall be deposited by the authority in the applicable bond reserve fund." Of course, there is nothing mandatory about this language as it relates to the governor and the legislature. Nor are we convinced it generates a "moral obligation" which translates into a pledge of credit.

Plaintiffs cite as authority opinions from two jurisdictions. The first, *Rich v. State,* 237 Ga. 291, 227 S.E.2d 761, 769 (1976), does not support plaintiffs' pledge-of-credit contention. The second, *Casey v. South Carolina State Housing Auth.,* 264 S.C. 303, 215 S.E.2d 184 (1975), stands virtually alone among opinions from jurisdictions which have considered similar legislation. See, e. g., *Maine State Housing Authority v. Depositors Trust Co.,* supra, 278 A.2d at 707; *Massachusetts Housing Finance Agency v. New England Merchants National Bank of Boston,* supra, 356 Mass. at 216–217, 249 N.E.2d at 608–609; *In re Constitutionality of ORS 456.720,* 537 P.2d 542, 545 (Ore. 1975).

We find no merit in plaintiffs' contention this Act pledges the state's credit.

VIII. Plaintiffs' final assertion is that the Act improperly delegated legislative power to the Authority in violation of article III, section 1, Iowa Constitution. This constitutional provision "divides the power of the state into three departments—legislative, executive and judicial—and prohibits the exercise by one department of the functions of the other departments except as authorized in the constitution." *State Bd. of Regents v. Lindquist,* 188 N.W.2d 320, 323 (Iowa 1971).

The intricacies of the modern problems the legislature seeks to solve have dictated the use of general rather than detailed standards in enactments aimed at resolving those problems. See *State v. Watts*, 186 N.W.2d 611, 613–616 (Iowa 1971); *State v. Steenhoek*, 182 N.W.2d 377, 380–381 (Iowa 1970); *Elk Run Telephone Co. v. General Telephone Co.*, 160 N.W.2d 311, 316–317 (Iowa 1968).

"[W]hen the legislature has adequately stated the object and purpose of the legislation and laid down reasonably-clear guidelines in its application, it may then delegate to a properly-created entity the authority to exercise such legislative power as is necessary to carry into effect that general legislative purpose." *Goreham v. Des Moines Met. Area Solid Waste Agency*, 179 N.W.2d 449, 455 (Iowa 1970); see *Stanley v. Southwestern Com. Col. Merged Areas*, 184 N.W.2d 29, 36 (Iowa 1971).

We will not find an unconstitutional delegation if the functions left to the agency are administrative details, not functions of legislating or adjudicating, and the statute prescribes in considerable detail what the board may do and how it must proceed. *State Bd. of Regents v. Lindquist*, supra, 188 N.W.2d at 323.

Here the legislative goals are intelligible and the policy of the enactment is clearly articulated. See §§ 220.2(1); 220.3; 220.4, The Code. The Authority's powers are specifically laid out. § 220.5, The Code. Finally, the means available to the Authority to carry out its purposes are plainly designated. §§ 220.12; 220.13; 220.15; 220.16; 220.20, The Code. The guidelines are adequate. See, e. g., §§ 220.2; 220.-1(19); 220.1(2)–(8), The Code.

Other jurisdictions considering similar legislation have rejected constitutional attacks based on delegation theories. See, e. g., *De Armond v. Alaska State Development Corp.*, supra, 376 P.2d at 723; *Maine State Housing Authority v. Depositors Trust Co.*, supra, 278 A.2d at 705; *Martin v. North Carolina Housing Corporation*, supra, 277 N.C. at 55, 175 S.E.2d at 680; *State ex rel. West Virginia Housing Dev. Fund v. Copenhaver*, supra, 153 W.Va. at 650–651, 171 S.E.2d at 553.

We find no unconstitutional delegation of legislative power in this Act.

IX. We have considered other contentions advanced by plaintiffs and find them to be without merit. The decree of the lower court is therefore affirmed.

AFFIRMED.