**TRAIN UNLIMITED CORPORATION, Appellant,**

v.

**IOWA RAILWAY FINANCE AUTHORITY, Appellee,**

**The Atchison, Topeka and Santa Fe Railway Company; Chicago and North Western Transportation Company; Illinois Central Gulf Railroad Company; Norfolk and Western Railway Company; Richard B. Ogilvie, Trustee of the Property of Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Debtor; and Union Pacific Railroad Company, Intervenors-Appellants.**

No. 83–1476.

Supreme Court of Iowa.

Feb. 13, 1985.

T. Scott Bannister and Michael B. Devine of Bump & Haesemeyer, P.C., West Des Moines, for appellant.

Kenneth H. Haynie, Lance A. Coppock and Richard W. Hoffmann of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, and B.A. Webster, Frank W. Davis, Jr. and Brent B. Green of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellants-intervenors.

Stephen W. Roberts, Robert C. Galbraith and David W. Dunn of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, and Thomas J. Miller, Atty. Gen., and Lester A. Paff, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, CARTER, and WOLLE, JJ.

CARTER, Justice.

Plaintiff, Train Unlimited Corporation, and several interstate railway corporations who had intervened in this litigation in the district court have appealed the district court's declaratory judgment upholding Iowa Code chapter 307B and certain specific provisions thereof against several constitutional challenges raised by appellants in this litigation. We review these claims on appeal and affirm the judgment of the district court.

The plaintiff, Train Unlimited Corporation, is an Iowa nonprofit corporation which functions as a taxpayers' public interest group organized to represent the interests of Iowa taxpayers believed to be adversely affected by improper state action with respect to the levying of state taxes or appropriation of state funds. The intervenors are comprised of those interstate rail carriers who operate railroads in this state. The defendant in the subject litigation is the Iowa Railway Finance Authority (hereinafter IRFA), an autonomous body created by the enabling legislation contained in Iowa Code chapter 307B.

The enabling legislation which created IRFA contains a series of legislative findings indicative of a serious shortage of viable rail lines and railway facilities in this state. The declaration of legislative purpose which flows from such findings is to preserve or provide those railway services now in existence or needed in order to preserve and promote the economy of the state. Iowa Code §§ 307B.2 and .3.

The act creates the IRFA as an autonomous body operating through a governing board consisting of five members appointed by the governor subject to confirmation by the senate. Iowa Code § 307B.6. The authority is empowered to acquire railway facilities, enter into contracts for the acquisition or management of railway facilities, and to extend financial assistance for the purpose of bettering rail transportation in this state.

The authority is empowered to finance such operations through the issuance of bonds payable solely out of the pledged receipts as designated in the applicable statutes. Section 307B.12 provides that such bonds are not to be a debt or liability of the state or any political subdivision thereof and are not a pledge of the state's credit. Such obligations are to be made the special obligations of IRFA payable solely from the special fund created in the enabling legislation. Use of the state general

fund to pay either interest or principal on such obligations is prohibited. Iowa Code § 307B.12.

Apart from revenues generated through operations carried on by the authority there are at least three other sources of revenues available as security for bonds proposed to be issued by IRFA. These sources are the diesel fuel tax imposed by section 324A.3 and section 324A.9 [1]; the wheel car tax imposed by section 435.2 and section 435.9; and delinquent railroad property taxes described in section 307.29. These tax revenues upon receipt are to be credited to the special railroad facility fund available as security for IRFA bonds.

Plaintiffs have brought this declaratory judgment action challenging the IRFA legislation and the proposed operation of the governing authority thereunder based upon their interpretation of several provisions of the Iowa Constitution. Intervenors have joined in that challenge. The district court in its declaratory judgment upheld the legislation as against all claims lodged by plaintiff and intervenors. Appellants now assert in this court that the district court's disposition of these constitutional issues was erroneous.

We separately consider the principal constitutional claims of appellants. Facts which have not been stated and which are helpful in evaluating the various legal claims will be discussed in connection with our consideration of the legal issues.

I. *Pledge of Future Tax Revenues.*

■ The first constitutional challenge to the IRFA legislation urged by plaintiff and intervenors involves the application of article VII section 5 of the Iowa Constitution. That clause is a debt limitation provision which provides, in part:

Except the debts herein before specified in this article, no debt shall be hereafter contracted by, or on behalf of this State, unless such debt shall be authorized by some law for some single work or object, to be distinctly specified therein;

and such law shall impose and provide for the collection of a direct annual tax, sufficient to pay the interest on such debt, as it falls due, and also to pay and discharge the principal of such debt, within twenty years from the time of the contracting thereof; but no such law shall take effect until at a general election it shall have been submitted to the people, and have received a majority of all the votes cast for and against it at such election. . . .

It is the contention of plaintiff and intervenors that Iowa Code sections 307B.9, .11, and .23 are violative of article VII, section 5 to the extent that these statutes permit future revenues from the diesel fuel tax, the wheel car tax, and delinquent railroad property taxes to be pledged to the payment of bonds issued by IRFA. They seek a declaratory judgment that this legislative scheme is invalid and request injunctive relief against the issuance of IRFA bonds secured by these tax revenues.

The identical claim was made in the district court. That court concluded that under such holdings as *John R. Grubb, Inc. v. Iowa Housing Finance Authority,* 255 N.W.2d 89, 97–98 (Iowa 1977), obligations issued by autonomous public authorities which are not payable from the state general fund are not debts of the state within the meaning of article VII, section 5. IRFA relies on the decision in *Grubb* to sustain the district court's holding on appeal and also on our decisions in *State Board of Regents v. Lindquist,* 188 N.W.2d 320, 322–23 (Iowa 1971); *Farrell v. State Board of Regents,* 179 N.W.2d 533, 542–45 (Iowa 1970); and *Brack v. Mossman,* 170 N.W.2d 416, 422–23 (Iowa 1969).

Plaintiff and intervenors urge that *Grubb* and the other cited decisions are distinguishable from the present case because they do not involve a pledge of future tax revenues. While the cases are distinguishable in this respect, we conclude that the distinction is not significant in

---

**1.** The imposition of the diesel fuel tax for this intended use was held to be invalid in *Atchison, Topeka and Sante Fe Railway Co. v. Bair,* 338 N.W.2d 338 (Iowa 1983) based upon federal law prohibitions contained in the Revised Interstate Commerce Act of 1978.

deciding the issue now before the court. The significance of *Grubb* lies in the fact that it is the most recent authoritative interpretation of what constitutes a debt contracted by the state or on behalf of the state for purposes of applying the limitations contained in article VII, section 5.

*Grubb* upheld the validity of legislation establishing the Iowa Housing Finance Authority against a challenge based on article VII, section 5. The basis for the challenge in that case was the fact that the alleged debt had been undertaken without holding a referendum of the type prescribed in article VII, section 5. The issue in the present case involves an alleged improper pledge of tax revenues in violation of the same constitutional provision. In order for either type of challenge to be upheld, however, it is necessary that the alleged debt qualify as a debt of the state under article VII, section 5. The term "debt ... contracted by, or on behalf of this state" cannot have one meaning where the challenge is based upon failure to hold a referendum and another meaning where the challenge is based upon an improper pledge of tax revenues.

The court in *Grubb* stated:

We hold a "debt," in the context of the above ... constitutional provision, arises only where the state itself is under a legally enforceable obligation....

... [T]he ... Authority is a "public instrumentality and agency of the State." ... But it is a corporate entity, separate and distinct from the state....

....

[The statute] requires the bonds to ... "state on their face that they are payable both as to principal and interest solely out of the assets of the authority and do not constitute an indebtedness of this state or any political subdivision of this state other than the authority within the meaning of any constitutional or statutory debt limit."

*Grubb*, 255 N.W.2d at 97. The statutory provisions held by this court in *Grubb* to be determinative of the issue of whether the obligations were debts contracted by the

state or on behalf of the state are strikingly similar to the statutory provisions which are challenged in the present action.

In both instances, the obligations are undertaken by an autonomous public authority. The bonds may not pledge the state's credit and the general fund of the state may not be used to pay either the interest or principal thereof. The IRFA bonding scheme differs from that approved in *Grubb* only in the method in which the state contributes to the special fund which may be pledged to secure the bonds. Under the bonding device approved in *Grubb*, the state's contribution to the special housing authority bond fund was authorized through appropriations. Under the IRFA legislation, the contribution is made by crediting revenues received from the diesel fuel tax, wheel car tax, and delinquent railroad property taxes directly to the special IRFA fund.

We do not view the earmarking of the three designated taxes for the special IRFA fund as a commitment of the state's credit or taxing power to guarantee payment of the IRFA bonds. Section 307B.12 provides: "These [IRFA bond] obligations ... are special obligations of the authority payable solely and only from the sources and special funds provided in this chapter." Bonds issued under the chapter may only be secured by "pledged receipts" as defined therein. Section 307B.4(14) defines "pledged receipts" as:

[T]he revenues and receipts received or to be received by the authority from the lease, operation or sale or disposition of railway facilities; from loan or other agreements relating to financial assistance; from grants, gifts or payments on guarantees made to the authority by any person; from accrued interest received from the sale of obligations; from income from the investment of special funds of the authority, including the special railroad facility fund; from the revenues and receipts deposited in the special railroad facility fund; and from any other moneys which are available for the payment of bond service charges.

It is significant that under this definition operating revenues which may be pledged include revenues "received or to be received." Other types of revenues, including the tax revenues at issue may only be pledged if they are "deposited in the special railroad facility fund."

We interpret the latter limitation as prohibiting the pledge of future receipts from the diesel fuel tax, wheel car tax, or delinquent railroad property taxes. Only those taxes actually credited to the special fund may be pledged as security for those obligations. Tax receipts credited to the fund after the issuance of the bonds may be embraced in the pledge, but the legislature remains free to amend or repeal sections 307.29, 307B.23, 324A.9 and 435.9 at any time so as to insulate revenues not yet credited to the special fund from any responsibility for payment of IRFA obligations. We see no significant difference in a constitutional sense between the legislative option to discontinue the earmarking of tax receipts and the optional appropriations approved in *Grubb*. We hold that use made of the three earmarked taxes does not create a debt contracted by the state or on behalf of the state for purposes of article VII, section 5 of our state constitution. *See and compare Arizona State Highway Commission v. Nelson*, 105 Ariz. 76, 459 P.2d 509 (1969) (bonds payable only out of special tax revenue fund and not out of state general fund are not debt of state).

*Richards v. City of Muscatine*, 237 N.W.2d 48 (Iowa 1975) cited by plaintiff and intervenors involved a constitutional debt limitation applicable only to municipal corporations. *State ex rel. Fletcher v. Executive Council*, 207 Iowa 923, 223 N.W. 737 (1929) is also distinguishable. It involved general obligation bonds issued directly by the state following approval of the bonding scheme by a referendum. The issue in that case concerned the method by which the bonds were to be retired. Because the bonds issued in the *Executive Council* case, unlike the IRFA bonds in the present case, were general obligations of the state, the court held that article VII, section 5 required that they be retired only by a direct annual tax. Neither *Richards* nor *Executive Council* supports appellants' contentions in the present case. The district court did not err in rejecting the contentions of plaintiff and intervenors based on article VII, section 5 of the Iowa Constitution.

II. *Other Constitutional Challenges.*

Plaintiff urges on this appeal that the challenged legislation is lacking in public purpose, improperly delegates legislative power to an executive authority, offends against state constitutional provisions guaranteeing due process of law and equal protection of the laws, and improperly confers privileges and immunities upon certain classes. In addition, they urge that the state impermissibly lends its credit to IRFA obligations contrary to article VII, section 1 of the Iowa Constitution.

■ A. *Public Purpose.* We fully reviewed the statements of public purpose and legislative findings contained in sections 307B.2 and 307B.3 of the enabling legislation in *Atchison, Topeka and Santa Fe Railway Co.*, 338 N.W.2d at 340–43. Because that case was decided on another ground, we declined to consider the rail carrier's public purpose challenge to chapter 307B. We are convinced, however, and now hold that the legislature could properly find that the health and welfare of the citizenry of this state is sufficiently dependent upon adequate rail transportation facilities to justify the enactment of the challenged legislation.

■ B. *Due Process, Equal Protection, and Privileges and Immunities Challenges.* We find that the claimed violations of the due process, equal protection, and privileges and immunities clauses cannot be determined favorably to appellants on the basis of the facial applicability of the IRFA legislation. Due process under article I, section 9 of the Iowa Constitution does not limit efforts undertaken toward residential, commercial or industrial renewal projects found to be in the public interest unless such legislation is an arbitrary or unreasonable use of the police power.

*Richards,* 237 N.W.2d at 57. In the latter case, we said that we must uphold public interest statutes such as urban renewal laws unless we can clearly say no rational basis exists for believing such laws further the public, health, safety, morality, or general welfare. Lack of rational basis for the challenged legislation has not been shown in the present case.

■■■ The equal protection and privileges and immunities clauses contained in article I, section 6 and article III, section 30 of the Iowa Constitution will not defeat a statutory scheme which advances a public purpose simply because it benefits certain individuals or classes more than others. *Grubb,* 255 N.W.2d at 95–96; *Richards,* 237 N.W.2d at 60; *Dickinson v. Porter,* 240 Iowa 393, 416, 35 N.W.2d 66, 80 (1948). It is sufficient if the statutory scheme operates equally upon those persons or classes of persons intended to be benefited as a result of a valid legislative finding of need. *Richards,* 237 N.W.2d at 60. *See also In the Matter of the Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 334 N.W.2d 290, 294 (Iowa 1983). Nothing in the present record convinces us that the challenged legislation offends against the equal protection or privileges and immunities clauses of the Iowa Constitution.

■■■ C. *Improper Delegation of Legislative Authority and Lending of Credit.* The arguments advanced by plaintiff and intervenors relating to an improper lending of the state's credit to IRFA obligations and the alleged improper delegation of legislative authority to the IRFA governing board are similar to challenges lodged to the Iowa Housing Finance Authority legislation in *Grubb.* We conclude that these contentions are lacking in merit for much the same reasons that prompted us to reject similar claims in the cited case. *See Grubb,* 255 N.W.2d at 98–99.

III. *State Involvement as Corporate Shareholder.*

■■■ Finally, we consider appellants' claim that chapter 307B is constitutionally infirm because it permits IRFA to become a shareholder in a corporation contrary to the proscriptions contained in article VIII, section 3 of the Iowa Constitution.

We find nothing contained in chapter 307B which expressly authorizes IRFA to assume such shareholder status. Appellants argue that such authority is to be found in section 307B.7(18) which permits IRFA to own a railway facility "in partnership, or in any other association with any other person." We believe that this grant of authority in section 307B.7(18) is designed to give IRFA some flexibility in entering into various types of arrangements with shippers, railways, and other parties in order to restore needed rail service. We will not, however, in the absence of evidence to the contrary, presume that the IRFA governing board will invoke such authority in order to offend against a specific constitutional prohibition.

We have considered all issues and arguments advanced by appellants whether or not specifically discussed in this opinion. We conclude that the district court properly rejected those challenges lodged by appellants to chapter 307B and various specific provisions thereof. The declaratory judgment of the district court is affirmed.

AFFIRMED.