**James E. BRADY, Loras Kluesner, and Michael Pratt, Appellants,**

v.

**CITY OF DUBUQUE, Iowa; and Donald Deich, Kathryn Krieg, Daniel Nicholson, and Dirk Voetberg, As Representing the Majority of the City Council of the City of Dubuque, Iowa, Appellees.**

**Vincent McFADDEN, Luella McFadden, John McFadden, and Mary Jo McFadden, Appellants,**

v.

**CITY OF DUBUQUE, Iowa, Appellee.**

Nos. 91–1462, 91–1534.

Supreme Court of Iowa.

Feb. 17, 1993.

Romolo N. Russo, Dubuque, for appellants James E. Brady, Loras Kluesner, and Michael Pratt.

Thomas D. Hanson of Hanson, Bjork & Russell, Des Moines, for appellants Vincent McFadden, Luella McFadden, John McFadden, and Mary Jo McFadden.

Barry A. Lindahl, Dubuque, and Ivan T. Webber and Steven K. Gaer of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Angela A. Swanson of Morain, Burlingame, Pugh, Peyton & Koop, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

CARTER, Justice.

These are consolidated appeals. The appellants in No. 91–1534 are Vincent McFadden, Luella McFadden, John McFadden, and Mary Jo McFadden (the McFaddens). They are property owners challenging the inclusion of their land in an economic development and urban renewal project of the City of Dubuque (the City). The appellants in No. 91–1462 are taxpayers challenging the statutory authority for the City's proposed urban renewal and economic development projects and the funding of same. The City prevailed in both cases in the district court.

After considering the arguments presented on appeal, we affirm the judgment in the taxpayers' appeal. The judgment in the property owners' appeal is reversed, and that case is remanded to the district court. Facts and circumstances relevant to our consideration of these appeals will be detailed in our discussion of the legal issues presented.

## I. *The Property Owners' Appeal.*

We first consider the property owners' appeal. The McFaddens urge that the district court erred in ruling that a statute exempting a "century farm" from inclusion in a designated "economic development area" was unconstitutional. At issue is Iowa Code section 403.17(20) (Supp.1989). This statute reads as follows:

> **"Economic development area"** means an area of a municipality designated by the local governing body as appropriate for commercial and industrial enterprises where housing and residential development for low and moderate income families, including single or multifamily housing. *Such designated area shall not include land which is part of a century farm.*

Iowa Code § 403.17(20) (Supp.1989) (emphasis added). The final sentence of this statute was added by a 1989 amendment. 1989 Iowa Acts ch. 299, § 4.

Sometime in 1989, the Iowa Department of Agriculture and Land Stewardship issued a certificate designating a sixty-two-

acre agricultural tract owned and operated by the McFaddens as a "century farm." Under criteria established by that agency, a "century farm" designation is a recognition that at least forty acres of a particular farm has remained in the same family for 100 or more years. On December 17, 1990, the City, by resolution, approved inclusion of the McFaddens' property in a designated economic development area. The McFaddens then brought the present action, alleging that as a result of the property's century farm status its inclusion in the economic development area was illegal.

The City filed a motion for summary judgment, asserting that the 1989 amendment exempting century farms from economic development areas was invalid on several constitutional grounds. These constitutional challenges, all posited on the Iowa Constitution, were: (1) that the statute violates Article I, Section 1 of the Iowa Constitution; (2) that this was improper class legislation in violation of Article I, Section 6 of the Iowa Constitution; (3) that the statute is void for vagueness; and (4) that the legislation improperly delegates legislative power. The district court found the 1989 amendment to section 403.17(20) was invalid for each and every one of the grounds asserted by the City. Consequently, the court granted the City's motion for summary judgment and dismissed the McFaddens' action.

■■■ Although the McFaddens strenuously urge on this appeal that the City lacks standing to raise all or some of the constitutional challenges lodged against the "century farm" legislation, we prefer to review the district court's ruling on the merits.[1]

■ A. *The effect of Article I, Section 1 of the Iowa Constitution.* The first con-

stitutional issue that we consider is the district court's conclusion that the exemption of century farms from inclusion in a designated economic development area violates Article I, Section 1 of the Iowa Constitution. That provision reads as follows:

All men are, by nature, free and equal, and have certain inalienable rights— among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety and happiness.

The district court cited the case of *Pierson v. Lane*, 60 Iowa 60, 14 N.W. 90 (1882), which, in limiting the scope of the common-law estate of fee tail, concluded that the constitutional provision last cited did not protect hereditary rights to property. From this negative conclusion concerning a claimed constitutional protection, the district court implied a constitutional prohibition against legislative protection of hereditary rights to property. Appellants urge that this implication is not warranted. We agree.

The fact that Article I, Section 1 does not guarantee the protection of hereditary rights to property does not, we believe, imply a constitutional prohibition against an act of the legislature granting certain protection to hereditary property rights. The challenged statute is not a contravention of Article I, Section 1 of the Iowa Constitution.

■ B. *Alleged violation of Article I, Section 6 of the Iowa Constitution.* In considering the district court's conclusion that the exemption of century farms from economic development areas was class legislation invalid under Article I, Section 6 of the Iowa Constitution, we are mindful of the following admonition:

---

1. The "standing" challenge, which appellants have lodged, is premised on the rule, recognized in our cases, that political subdivisions are subordinate political entities that may not invoke constitutional challenges in opposition to the statutory directives of their creator. *Iowa Power & Light Co. v. State Commerce Comm'n*, 410 N.W.2d 236, 239 (Iowa 1987); *Board of Supervisors v. Iowa Dep't of Revenue*, 263 N.W.2d 227, 232 (Iowa 1978); *Warren County v. Judges of the*

*Fifth Judicial Dist.*, 243 N.W.2d 894, 897 (Iowa 1976). Notwithstanding this rule, we considered the merits of a constitutional challenge to a statute by a political subdivision in *City of Waterloo v. Selden*, 251 N.W.2d 506 (Iowa 1977), because the parties had not argued the standing issue on appeal. Our inclination to consider the merits of the City's constitutional arguments in the present case stems from appellants' failure to raise the standing issue in the district court.

One who challenges a statute on this constitutional ground must negate every conceivable basis which may support the classification, and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest.

*John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.,* 255 N.W.2d 89, 95 (Iowa 1977).

In considering the interpretation of the challenged statute, later in this opinion we conclude that the term "century farm" refers to a well-known program of the Iowa Department of Agriculture and Land Stewardship for the designation of multigenerational family farms that meet certain criteria established by that agency. That interpretation suggests that the legislative purpose for the challenged legislation is the protection of the cultural achievement that is represented by a multigenerational family farm. Governmental action protecting cultural interests has in other contexts been recognized as promoting a legitimate governmental interest. *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182, 185 (9th Cir.1982); *Colorado River Indian Tribes v. Marsh,* 605 F.Supp. 1425, 1430 (C.D.Cal. 1985). For these reasons, we reject the district court's conclusion that the challenged legislation violates Article I, Section 6 of the Iowa Constitution.

C. *The void for vagueness challenge.* In finding the challenged statute void for vagueness, the district court emphasized that the term "century farm" is nowhere defined in the legislation. The court acknowledged that a statute has the requisite specificity if its meaning may be gleaned by reference to similar statutes, prior judicial interpretations, the dictionary, or a common and generally accepted meaning for the statutory language. *See Pottawattamie County v. Iowa Dep't of Envtl. Quality,* 272 N.W.2d 448, 452 (Iowa 1978). It concluded, however, that such extraneous sources do not provide a sufficiently definite meaning in the present case.

Appellants urge that the Department of Agriculture and Land Stewardship had established a sufficiently well-known definition of "century farm" in connection with a program that it had been administering during the twelve-year period preceding the enactment of the challenged statute. As a result of that activity, appellants contend that the meaning of the term "century farm" was well known and generally accepted throughout the state at the time the challenged legislation was enacted. We agree with this conclusion.

"Intrinsic aids" to statutory interpretation arise from composition in structure of the act, while "extrinsic aids" pertain to matters outside the act. *Willis v. City of Des Moines,* 357 N.W.2d 567, 571 (Iowa 1984). Matters outside of the act that may be used as an aid to interpretation include contemporary circumstances. *State v. Bessenecker,* 404 N.W.2d 134, 136–37 (Iowa 1987); *Smith v. Thompson,* 219 Iowa 888, 896, 258 N.W. 190, 194–95 (1935). *See also Model Stat. Constr. Act* § 2, 14 U.L.A. 391 (1990). We believe that, as a result of the century farm program of the Department of Agriculture and Land Stewardship, the concept of a "century farm" did have an established meaning and that this was the meaning that the legislature intended in the enactment of the statute.

D. *Whether the statute presents an improper delegation of legislative power.* The final constitutional question that we consider is the district court's conclusion that the challenged legislation involves an unconstitutional delegation of legislative power. Again, we disagree. In interpreting the statute, we conclude that the legislature intended to incorporate the definition of "century farm" employed by the Iowa Department of Agriculture and Land Stewardship at the time the challenged legislation was adopted in 1989. Consequently, the meaning of the phrase "century farm" has been fixed by direct legislative enactment.

Although, as the district court suggests, the agency is free to alter its definition, this presents no constitutional issue in the present case. These appellants do not contend that the term "century farm," as used in the statute, has a meaning other than that which was being utilized in the agency's "century farm" program at the time

the legislation was enacted. We hold that the challenged statute, as applied to the McFaddens, did not improperly delegate legislative authority.

Based upon the conclusions we have reached concerning the constitutional challenges lodged to the 1989 amendment to Iowa Code section 403.17(20), the district court erred in granting the City's motion for summary judgment. The McFaddens' action must be remanded to the district court for a decision on their entitlement to an exemption under that statute.

## II. *The Taxpayers' Appeal.*

In the taxpayers' appeal, they joined in the arguments presented by the McFaddens that seek to exclude the latter's thirty-two-acre tract from the project. We doubt that they have standing to advance that claim. Our action on the McFaddens' appeal reversing the grant of summary judgment in favor of the City will afford an opportunity for the interested parties to further litigate that question in the district court.

The taxpayers make several other arguments on this appeal, all of which challenge in some respect the authority of the City to carry out the proposed urban renewal and economic development project or to fund same in the manner contemplated. We will consider some of these issues together because they turn on the authority of the legislature to designate programs of this type as actions for the public benefit.

A. *Whether direct payments to private business interests participating in an economic development area violates Article III, Section 31 of the Iowa Constitution.* The taxpayers first argue that the district court erred in concluding that provisions of Iowa Code section 15A.1 (1989) authorizing direct payment to private business interests in a designated economic development area do not violate Article III, Section 31 of the Iowa Constitution. That provision prohibits appropriation of public money or property for private purposes.

In making this argument, appellants recognize that the advancement of public moneys to contractors or developers for purposes of aiding a governmentally assisted public program such as low-rent housing or urban renewal has been held not to violate this constitutional proscription. *See John R. Grubb,* 255 N.W.2d at 95; *Richards v. City of Muscatine,* 237 N.W.2d 48, 58 (Iowa 1975). The taxpayers urge, however, that it is a different matter to authorize direct payment of public moneys for the sole purpose of encouraging private businesses to prosper.

In enacting section 15A.1, the General Assembly made a legislative finding that "[e]conomic development is a public purpose for which the state, a city, or a county may provide grants, loans, guarantees, and other financial assistance to or for the benefit of private persons." 1987 Iowa Acts ch. 183, § 2(1). We are not required to treat a legislative declaration of purpose as final, binding, or conclusive. *John R. Grubb,* 255 N.W.2d at 93; *Simpson v. Low–Rent Hous. Agency,* 224 N.W.2d 624, 627 (Iowa 1974). We have stated, however, that we will not find an absence of public purpose "except where such absence is so clear as to be perceptible by every mind at first blush." *John R. Grubb,* 255 N.W.2d at 93. It can be persuasively argued, we believe, that public assistance of economic development within a community is beneficial to a potentially broader segment of the community than are urban renewal projects or low-rent housing projects. Consequently, we have no problem in accepting the legislative declaration of public purpose as to payments authorized under section 15A.1.

Our finding that the authorization for expenditure of public moneys contained in section 15A.1 and the City's proposed utilization of that authorization in the present case are in the public interest also prompts us to reject a constitutional challenge by the taxpayers based on Article I, Section 6 of the Iowa Constitution. That challenge asserts that these payments will benefit one class of citizens more than other citizens. Because we have found that an adequate public purpose exists for the granting of these special benefits, this argument

necessarily fails. *See Richards,* 237 N.W.2d at 60.

■ B. *Utilization of section 15A.1 economic development powers and section 403.14 urban renewal powers in combination.* The taxpayers argue that in authorizing the challenged project the City improperly combined economic development powers under section 15A.1 with urban renewal powers under section 403.12 and section 403.14. We disagree. We believe the point of beginning in answering this contention is a 1985 amendment to Iowa Code section 403.2. Prior to that amendment, the declaration of legislative policy with respect to urban renewal projects indicated that the impetus for such programs was the elimination of slum or blighted areas. The 1985 amendment added the following declaration of legislative policy as an additional impetus to urban renewal programs authorized under this statute:

> It is further found and declared that there exists in this state the continuing need for programs to alleviate and prevent conditions of unemployment; and that it is accordingly necessary to assist and retain local industries and commercial enterprises to strengthen and revitalize the economy of this state and its municipalities; that accordingly it is necessary to provide means and methods for the encouragement and assistance of industrial and commercial enterprises in locating, purchasing, constructing, reconstructing, modernizing, improving, maintaining, repairing, furnishing, equipping, and expanding in this state and its municipalities; that accordingly it is necessary to authorize local governing bodies to designate areas of a municipality as economic development areas for commercial and industrial enterprises....

1985 Iowa Acts ch. 66, § 1.

Since the enactment of the 1985 amendment to section 403.2, chapter 15A and chapter 403 are aimed at the same general purpose, *i.e.,* stemming economic decline and promoting economic growth. It would seem that an economic development area designated under an urban renewal plan would be a logical situs for those business operations eligible for funding under section 15A.1. When, as here, an economic development area within an urban renewal plan has been established, there is nothing in either chapter 15A or chapter 403 to indicate that the powers authorized by the respective chapters may not be used in combination.[2]

■ C. *Whether the City can fund the local share of state and federal grants with public moneys under urban renewal plan.* The taxpayers contend that neither chapter 403 nor chapter 15A authorizes the City to expend public money for the City's required matching share of state or federal grants needed to aid in economic development. They challenge the district court's ruling to the contrary. We believe that the district court was correct.

Section 403.6(5) empowers the City to

> accept advances, loans, grants, contributions and any other form of financial assistance from the federal government, the state, county, or other public body, or from any sources, public or private, for the purposes of this chapter.... A municipality may include in any contract, for financial assistance with the federal government for an urban renewal project, such conditions imposed pursuant to federal laws as the municipality may deem reasonable and appropriate and which are not inconsistent with the purposes of this chapter.

The payment of a "matching share" by the City is a condition for these grants. The City is not in a position to fund the project independently of the grants. It is thus not inconsistent with the purposes of the urban renewal statutes for the City to advance the matching funds.

■ D. *Retention of taxes from incremental increase in land values.* The tax-

---

**2.** This conclusion causes us to reject two other related contentions advanced by the taxpayers. These are: that bonds issued under § 403.9 may not be used to supplement projects also funded under § 15A.1, and that supplementing urban renewal projects with § 15A.1 grants violates the "fair value" provisions of § 403.8.

payers argue that it is improper for the legislature to authorize cities to control the entire increase in taxes that will be brought about by urban renewal activities under chapter 403. This is the same argument that was raised and rejected in *Richards*, 237 N.W.2d at 56–57. We held in that case that the legislature has the power to delegate control of the tax increments. We are not inclined to depart from that view at this time.

■■■■ E. *Answering for the debt of another.* Finally, we consider and reject the taxpayers' argument that under the project the City is permitted to answer for the debt of another—an alleged contravention of Article VIII, Section 3 of the Iowa Constitution. The district court rejected this claim on the basis that the plan does not contemplate that the City will stand as surety for any private party. We agree with that conclusion and reject the taxpayers' claim based on Article VIII, Section 3 of the Iowa Constitution.

We have considered all arguments presented. We conclude that on the taxpayers' appeal the judgment in No. 91–1462 should be affirmed. On the McFaddens' appeal, the judgment in No. 91–1534 is reversed and remanded.

(No. 91–1462) AFFIRMED; (No. 91–1534) REVERSED AND REMANDED.