**SERGEANT BLUFF–LUTON SCHOOL DISTRICT, Appellant,**

v.

**CITY OF SIOUX CITY, Appellee.**

No. 96–306.

Supreme Court of Iowa.

April 23, 1997.

Daniel D. Dykstra and Edward C. Poulsen of Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, for appellant.

James L. Abshier, City Attorney, and C. Maurice Rawe, Chief Deputy City Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

A school district brought this equitable action against a city, seeking a permanent injunction to restrain the city from including a high income residential area as a part of an economic development area under Iowa Code chapter 403 (1993). The district court denied relief because it considered injunctive relief inappropriate. We agree.

It seems apparent why the school sought to bring its claim as an equitable action. The school believes the city used high-handed methods to illegally deprive the school of a substantial portion of its rightful tax base. So the school district understandably wants the dispute resolved on the basis of equity, even though the normal method for a party of standing to claim illegal conduct by a governmental entity is by petitioning for a writ of certiorari, a legal proceeding.

For a statement of facts we cannot improve on the findings of the trial court, which we quote and adopt as our own:

> The plaintiff (hereinafter "school district") is required to provide educational services for students residing in the Virginia Meadows addition to Sioux City, Iowa.
>
> The defendant (hereinafter "city") is a municipality that adopted an urban renewal plan under chapter 403 of the Code of Iowa (1993).[1] On or about December 19, 1994, the city annexed the Virginia Meadows addition and amended its urban renewal project to include the Virginia Meadows addition after a hearing was held

---

1. Iowa Code chapter 403, Iowa's urban renewal law, was explained in detail in *Richards v. City of Muscatine*, 237 N.W.2d 48 (Iowa 1975).

pursuant to Code section 403.5(3). The school district had actual notice of the hearing and attended it.

The Virginia Meadows addition is a residential subdivision that was developed privately prior to its inclusion in the urban renewal district. The subdivision was platted October 6, 1994, by a private developer.... The developer paid for all costs of purchasing the land and developing it for residential use, including the paving of streets, installation of curb and gutter, sanitary sewer, storm sewer, water lines and all other necessary utilities.

When the city annexed Virginia Meadows it provided it with water and sewer services. In addition improved streets within the City of Sioux City give access to Virginia Meadows.

The city agrees that Virginia Meadows is not a blighted or slum area as defined in Code chapter 403. The city did not make a finding that Virginia Meadows is an area intended for low or moderate income housing. Rather the city simply included Virginia Meadows in its urban renewal district. Stated objectives of the urban renewal district include developing residential land and promotion of economic development.

The developer did not intend to provide housing for low or moderate income families. The average home in Virginia Meadows costs approximately $150,000 and the restrictive covenants attached to the development prohibit the location of modular homes, trailer homes or single family homes smaller than 1300 square feet within the addition. The cost of construction of homes in the addition is anywhere between $75 to $100 per square foot.

Although the city could have annexed Virginia Meadows and agreed to provide it with utilities even if it were not included within its urban renewal district, it would not have done so. The city intended to use the tax revenues generated from Virginia Meadows for tax increment financing (TIF) for economic development of its urban renewal district. The city issued bonds in reliance on its anticipated tax revenue from its TIF district containing Virginia Meadows.

Families with median income in the Sioux City area cannot afford to purchase a new home in Virginia Meadows. The average purchaser of a new home in Virginia Meadows is a new arrival to the Sioux City area or a family that is "stepping up" its housing by selling an existing home of lesser value and purchasing a new home in Virginia Meadows. When a purchaser "steps up" to Virginia Meadows, housing less expensive than that available in Virginia Meadows is made available. Sioux City was experiencing a housing shortage in December of 1994 and alleviation of the housing shortage was an objective of its urban renewal district plan.

The city's inclusion of Virginia Meadows in its urban renewal district allows the city to receive the new property tax revenue from the Virginia Meadows addition for a period of several years. This revenue is used to service economic development debt.

The school district spends more to educate a child than it is reimbursed by the state. Local property taxes make up the difference, but there is a limit to the amount the district can levy without additional voter approval. Due to Virginia Meadows' inclusion in the city's urban renewal district, the school district received less revenue than it normally would. The revenue sharing formula for the district is however very complex and the school district will be compensated for some, and possibly all, of the lost revenue. In order to entirely recoup the lost revenue, local property taxes in the district will have to increase.

The Virginia Meadows addition added at least 100 students to the school district and imposed additional costs. At the time of trial the school district had not been fully reimbursed for the additional cost through the state's revenue sharing formula.

■ In denying an injunction as inappropriate, the district court applied the balancing of equities test contemplated in *Lakota Consolidated Independent School v. Buffalo Center/Rake Community Schools*, 334

N.W.2d 704, 709 (Iowa 1983). We affirm the denial on a different basis; we think injunctive relief was inappropriate because the plaintiff school district had an adequate legal remedy in certiorari.

 I. Certiorari under Iowa rule of civil procedure 306 is an action at law to test the legality of an action taken by a court or tribunal. *Bear v. Iowa Dist. Ct.*, 540 N.W.2d 439, 440 (Iowa 1995). A city exercising a governmental function is a tribunal within the meaning of rule 306. *Smith v. City of Fort Dodge*, 160 N.W.2d 492, 495 (Iowa 1968). We defined the nature of a judicial function by a tribunal that is not a court in *Buechele v. Ray*, 219 N.W.2d 679, 681 (Iowa 1974). We stated that a judicial function is exercised if it (1) involves proceedings in which notice and an opportunity to be heard are required, or (2) "a determination of rights of parties is made which requires the exercise of discretion in finding facts and applying the law thereto." *Id.* The city's act challenged here was clearly a judicial one under this definition.

 II. The school district makes no real claim that it could not have raised its challenge by certiorari. Rather it rests its case on the assertion that certiorari is not an exclusive remedy. *See* Iowa R. Civ. P. 308 (certiorari shall not be denied or annulled because party has other remedy). The school district relies on three cases in which we reached the merits of challenges to a city's action under the urban renewal chapter which were raised by proceedings other than certiorari. *Brady v. City of Dubuque*, 495 N.W.2d 701 (Iowa 1993); *Dilley v. City of Des Moines*, 247 N.W.2d 187 (Iowa 1976); *Richards v. City of Muscatine*, 237 N.W.2d 48 (Iowa 1975). Although *Dilley* did include a prayer for an injunction, the three cited equitable actions were brought for declaratory relief. In none of them did we impugn the well-established rule that an action for an injunction will not lie where the petitioner has an adequate remedy at law. *Matlock v. Weets*, 531 N.W.2d 118, 122 (Iowa 1995); *Planned Parenthood of Mid–Iowa v. Maki*, 478 N.W.2d 637, 639 (Iowa 1991).

The school district's focus is wrong. The question does not turn on the variety of claims that could be asserted in a certiorari proceeding, a proceeding that it could have—but did not—bring. Rather the question turns on the limited circumstances under which an action for an injunction can be brought. Because the school district clearly had a legal remedy—certiorari—available, its proceeding for an injunction was correctly dismissed.

**AFFIRMED.**