Michael P. McMURRAY, Bobbye J. McMurray, Valley West DM, an Iowa Limited Partnership, and Merle Hay Mall, an Iowa Limited Partnership, Appellants,

v.

The CITY COUNCIL OF THE CITY OF WEST DES MOINES, Iowa, and the City of West Des Moines, Iowa, Appellees.

No. 01–0701.

Supreme Court of Iowa.

Feb. 27, 2002.

Rehearing Denied March 26, 2002.

William J. Koehn, Sharon K. Malheiro and Deborah M. Tharnish of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Edward W. Remsburg, Ivan T. Webber and Nathan J. Overberg of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellees.

STREIT, Justice.

A group of taxpayers argue the City of West Des Moines incorrectly used its powers under the urban renewal statute to create an urban renewal plan including projects to facilitate various public infrastructure improvements.[1] Opponents argue the designation of an urban renewal area in this case is for the sole purpose of allowing a private developer to construct a $150,000,000 shopping mall. They challenged the urban renewal development plan arguing it is inconsistent with the purposes of the Iowa urban renewal statute, inconsistent with the City's comprehensive plan, and in violation of the Iowa Constitution. On a joint motion for summary judgment, the district court disagreed with Opponents' arguments and found in favor of the City. Opponents appeal. We conclude this urban renewal plan is consistent with both Iowa Code chapter 403 and the comprehensive plan. We also conclude the urban renewal plan does not violate the Iowa Constitution. We affirm.

## I. Background and Facts

A group of people joined to challenge the actions of the West Des Moines City Council in designating a particular region an urban renewal area. Michael and Bobbye McMurray are residents and taxpayers of Dallas County, Iowa. Valley West Mall is an Iowa limited partnership that owns and operates Valley West Mall in

---

1. Plaintiffs Michael and Bobbye McMurray, Valley West Mall, and Merle Hay Mall shall be referred to as "Opponents."

West Des Moines, Iowa. It is a taxpayer in the City of West Des Moines. Merle Hay Mall is an Iowa limited partnership that owns and operates Merle Hay Mall in the cities of Des Moines and Urbandale, Iowa.[2]

GGP Jordan Creek L.L.C. proposed to build a regional shopping mall and adjoining retail facilities (the "Project") on approximately 200 acres of land one mile south of interstate 80 in the City of West Des Moines in Dallas County. The surrounding property is primarily agricultural land with some residential development. The property is over one mile from the interstate highway.

The West Des Moines City Council approved a Development Agreement ("Agreement") between the City and GGP for the Project. The Agreement also provided the City would pay GGP $2,500,000 to offset a portion of the costs for construction of several recreational public use components on the private property of the mall.[3] The City agreed to pay for all of the road, sewer, and water main infrastructure necessary for the development of the Project. The Agreement provided the City would finance these improvements through tax increment financing (TIF) by adopting an urban renewal plan pursuant to Iowa Code chapter 403 (1999) for the area of proposed development.[4] GGP agreed to build a shopping center valued at approximately $150,000,000.

The City Council approved the agreement by resolution. On May 30, 2000, the City Council held a public hearing. The Council ultimately adopted the Jordan Creek Urban Renewal Plan (the "Plan") under Iowa Code chapter 403. The Plan designated a 1075 acre tract including the Project property as an urban renewal area for economic development and proposed to undertake public improvements within the area. In adopting the Plan, the City found,

> The Plan is in conformance with the existing West Des Moines Comprehensive Plan and that a feasible method exists for the relocation of any families who would be displaced from the urban renewal area into decent, safe and sanitary dwelling accommodations within their means and without undue hardship to said families.

> The City Council finds the project area to be suitable for designation as an economic development area, to encourage the location and expansion of certain commercial enterprises to more conveniently provide needed employment ser-

---

2. It is not clear why Merle Hay Mall is an appropriate party to this lawsuit. Merle Hay Mall, unlike Valley West Mall and the McMurrays, is not a taxpayer of the City of West Des Moines or Dallas County. Opponents appear to contend Merle Hay Mall has standing by virtue of its distance from the proposed shopping mall. It is located approximately seven miles from the urban renewal area. Opponents refer to the City's comprehensive plan which describes the service area for a regional commercial area is generally at least eight miles from another regional commercial area. However, the site plan of the mall is not an issue in this appeal. Therefore, Merle Hay Mall's mere location with respect to the proposed mall does not appear sufficient to confer on it standing to challenge the actions of the City Council in this case. Though the City argued Merle Hall Mall does not have standing in its memorandum of law in support of its motion for summary judgment, neither party has argued the issue on appeal.

3. Opponents do not contest this expenditure on appeal.

4. Iowa Code section 403.19(2) permits municipalities to use TIF bonds to finance an urban renewal project within the urban renewal area. Iowa Code § 403.19(2); *see also* Iowa Code §§ 403.9, 403.19(1); *Richards v. City of Muscatine*, 237 N.W.2d 48, 58 (Iowa 1975) (discussing TIF under Iowa Code section 403.19).

vices and facilities to the residents of the City, to alleviate and prevent conditions of unemployment by assisting and retaining local industries and commercial enterprises and to strengthen and revitalize the economy of the State and the City.

The City did not reference the proposed shopping mall. The Plan did not include the development of the shopping mall as one of its proposed projects. Instead, the Plan merely provided for the development and improvement of public infrastructures. On June 12, 2000, the City Council approved a TIF district covering the Plan to provide financing for the municipal projects proposed by it.

Opponents filed a petition for writ of certiorari and declaratory judgment seeking to declare the City's adoption of the urban renewal plan and related TIF district illegal. Opponents claim the City failed to comply with the procedural requirements of Iowa Code chapter 403 in adopting the Plan. Opponents also argue the Plan violates article III, section 31 of the Iowa Constitution.

Both Opponents and the City filed motions for summary judgment. On April 4, 2001, the district court granted the City's motion for summary judgment. The court concluded the following:

1) Chapter 403 did not require the City to make specific findings regarding the need to reduce unemployment or shortage of housing to establish an economic development area;

2) Chapter 403 did not require the City to establish the existence of unemployment or shortage of housing;

3) The City did not act in an arbitrary, capricious, or unreasonable manner in designating the urban renewal area despite the fact the City did not investigate what effect, if any, the proposed shopping center would have on existing businesses;

4) The Plan was not inconsistent with the City's comprehensive plan;

5) The City was not required to designate a percentage of the project revenue for low-income family housing because the economic area was designated for commercial, rather than residential development; and

6) The urban renewal plan did not violate article III, section 31 of the Iowa Constitution.

The district court noted the City proposed to build an infrastructure that would benefit both the private developer and the area residents. The court further found the proposed development in the urban renewal area would stimulate commercial growth and prevent unemployment. Opponents appeal.

On appeal, Opponents argue the district court erred in granting summary judgment. Specifically, Opponents contend the court erred as a matter of law in determining the City complied with the procedural requirements of Iowa Code chapter 403. Further, Opponents argue the court erred in concluding the urban renewal plan does not violate the City's comprehensive plan or the Iowa Constitution.

## II. Standard of Review

■ We review a grant of a motion for summary judgment for correction of errors at law. *Kolbe v. State*, 625 N.W.2d 721, 725 (Iowa 2001) (citing *Knudson v. City of Decorah*, 622 N.W.2d 42, 48 (Iowa 2000)). Summary judgment shall be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 237(c). We must review

the entire record in the light most favorable to the party opposing the motion for summary judgment. *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000). With respect to Opponents' constitutional challenge, our review is de novo. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). We will make an independent evaluation of the totality of the circumstances shown by the entire record. *Id.*

### III. The Merits

On appeal, Opponents challenge the City's actions based on three grounds. Opponents first argue the City did not comply with the procedural requirements of Iowa Code chapter 403. They also contend the urban renewal plan violates the City's comprehensive plan. Finally, Opponents assert the City's actions violate the Iowa Constitution. Before we address the issues before us, we briefly examine the nature of action taken by the City Council.

■ The nature of the City Council's actions in this case is critical to determine whether the City Council acted in accordance with chapter 403. In general, the City Council acts in a legislative capacity. Chapter 403 grants city councils authority to carry out urban redevelopment, rehabilitation, and renewal projects. As such, the City Council's action in designating this economic development area involved determination of legislative, not judicial, facts. Legislative facts are "generalized propositions of fact or policy guiding the exercise of legislative judgment." *Montgomery v. Bremer County Bd. of Supervisors*, 299 N.W.2d 687, 693 (Iowa 1980) (quoting Arthur E. Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act*, 63 Iowa L.Rev. 285, 288 (1977)). Moreover, legislative facts are not concerned with particular problems of individuals, but involve a determination of what is in the best interests

of the public generally. *Trager v. Peabody Redevelopment Auth.*, 367 F.Supp. 1000, 1002 (D.C.Mass.1973).

■ It is appropriate for a city council, when determining whether an area may be designated as an economic development area, to be concerned with the area itself, as well as with considerations of public policy. Such decisions by the city council involving legislative facts necessarily involve the exercise of considerable discretion. Legislative declarations, such as the one before us, are entitled to great weight. *See, e.g., Miller v. City of Tacoma*, 61 Wash.2d 374, 384, 378 P.2d 464, 470 (1963) ("the legislative declaration that blighted areas constitute a serious and growing menace injurious to the public health, safety, morals, and welfare is entitled to great weight"). Consequently, we have no power to interfere with the City Council's legislatively given discretion to carry out the purposes of the urban renewal law. *See, e.g., Dilley v. City of Des Moines*, 247 N.W.2d 187, 192 (Iowa 1976) (the court may invalidate the findings of a legislative body only if they are arbitrary, capricious, or unreasonable). Rather, we presume the City Council, as a governing body of elected officials, acted in the overall best interests of the public.

Also important to our analysis is the language of the statute and the powers the legislature has conferred on municipalities. In general, under the powers provided in this chapter, a municipality may designate and develop an economic development area in an urban renewal area. Iowa Code § 403.17(25). Municipalities are vested with "*all the powers* necessary or convenient to carry out and effectuate the purposes and provisions of this chapter...." *Id.* § 403.6 (emphasis added). To aid in the planning, undertaking or carrying out of an urban renewal project, municipalities may:

1) incur the entire expense of any public improvements made by such public body in exercising the powers granted in this section;

2) cause public buildings and public facilities, including parks, playgrounds, and recreational, community, educational, water, sewer or drainage facilities, or any other works which it is otherwise empowered to undertake to be furnished; and

3) furnish, dedicate, close, vacate, pave, install, grade, regrade, plan or replan streets, roads, sidewalks, ways or other places.

*Id.* § 403.12(1)(b), (f), (g). City councils are clearly vested with broad authority to carry out the goals of the urban renewal law. Bearing in mind the wide discretion and authority the legislature has given to municipalities in this respect, we now turn to the issues before us.

### A. Iowa Code Chapter 403

Iowa Code chapter 403 contains the state urban renewal law. *Id.* § 403.1 (1999). Although one purpose of the urban renewal law is the prevention and elimination of slums and blighted areas within the state, it is also designed to provide general economic development for a community. *Bowers v. Polk County Bd. of Supervisors*, 638 N.W.2d 682, 697 (Iowa 2002) (citing Iowa Code § 403.2(3)). In order to advance these purposes, a municipality may assist and retain industries and commercial enterprises to strengthen and revitalize the economy and prevent unemployment. *Id.* The legislature authorized local governing bodies to designate areas of a municipality as "economic development areas for commercial and industrial enterprises, public improvements related to housing and residential development, or construction of housing for low and moderate-income families." *Id.* Chapter 403 outlines the process which a municipality must follow in adopting an urban renewal plan. According to the procedural requirements within this chapter, the municipality must adopt a "resolution of necessity" finding:

1) one or more slum, blighted, or economic development areas exist in the municipality; and

2) the rehabilitation, conservation, redevelopment, development, or a combination thereof, of the area is necessary in the interest of the public health, safety, or welfare of the residents of the municipality.

Iowa Code § 403.4. The urban renewal law further provides the governing body must determine the area to be an economic development area and designate it as appropriate for an urban renewal project. *Id.* § 403.5(1). Then, the governing body must hold a public hearing on the plan after appropriate notice. *Id.* § 403.5(3). Finally, after consulting with other taxing entities, the governing body must submit the plan to the municipality's planning commission for review and recommendations. *Id.* § 403.5(2).

### 1. Designation of the Economic Development Area

Opponents argue the City failed to make specific, detailed, and comprehensive findings that the area could be properly designated an "economic development area" under the urban renewal law. Iowa Code section 403.17 defines "economic development area" in part as

an area of a municipality designated by the local governing body as appropriate for commercial and industrial enterprises, public improvements related to housing and residential development, or construction of housing and residential development for low and moderate income families, including single or multifamily housing . . . .

*Id.* § 403.17. In the City Council's May 30, 2000 resolution, the Council determined the Jordan Creek urban renewal plan area as defined in the Plan is an economic development area within the meaning of Iowa Code chapter 403. The Council declared the area eligible for designation as an urban renewal area and otherwise meets all of the requirements under chapter 403. Finally, the Council found the development of the area is necessary in the interest of public health, safety, and welfare of the residents of the City of West Des Moines.

 In arguing the City Council improperly designated the area an economic development area, Opponents concede an urban renewal plan may be established based exclusively on the existence of an economic development area without any finding of slum or blighted areas. However, Opponents argue because the Plan contains only an economic development area, the City was required, as a prerequisite to designating the urban renewal area, to find the existence of unemployment or a shortage of housing. This argument is without merit.

Iowa Code section 403.2 contains the declaration of policy for Iowa's urban renewal statute. Nothing in this section suggests the City must find all of the conditions discussed in the declaration of policy as a prerequisite to designating a region an urban renewal area. The declaration of policy states that vesting municipalities with urban renewal powers is warranted in part to alleviate and prevent unemployment and a shortage of housing. The phrase *"prevent* unemployment and a shortage of housing" suggests the City was not required to find unemployment or a housing shortage *presently* exist before it declared the area an urban renewal area. Furthermore, this section provides the City may prevent unemployment and

shortage of housing by encouraging "the location and expansion of commercial enterprises to more conveniently provide needed services and facilities of the commercial enterprises to municipalities and the residents of the municipalities." *Id.* § 403.2(3). To accomplish these goals, the legislature gave municipalities the power to engage in urban renewal activities.

The statutory provisions simply provide "a municipality shall not approve an urban renewal project for an urban renewal area unless the governing body has, by resolution, determined the area to be a[n] ... economic development area ... and designated the area as appropriate for an urban renewal project." *Id.* § 403.5(1). There are no other provisions in the code regulating the establishment of an economic development area. The statute does not impose a burden upon the City Council to make specific findings, and we decline to read such a requirement into the statute. Rather, the statute merely requires a declaration by the City Council in the resolution of necessity the area is suitable for economic development to support and stimulate commercial and industrial growth.

The City Council complied with all of the statutory requirements of chapter 403. The City Council designated the economic development area and found its development necessary in the interest of public health, safety, and welfare of the residents of the City. The City complied with the various procedural requirements including holding a public hearing, consulting with taxing entities, and submitting the Plan to the City's planning commission. The statute required nothing more of the City in designating this urban renewal area. The undisputed record shows much evidence to support the conclusion the City Council has long considered the area at issue as a prime econom-

ic development area. Additionally, the record supports the determination the City Council considered whether the urban renewal project would promote the public health, safety, and welfare. Among the factors discussed by the City Council were tourism, quality of life, tax base, employment, culture and entertainment, property values, general economic growth, and encouraging people to move to and stay in Iowa.

It is not within our province to decide whether the City made a good or bad decision in designating this economic development area. Rather, the City's decision was a matter of public policy and we will not second guess their legislatively-given discretion. We conclude the district court correctly found the City validly exercised its authority pursuant to Iowa Code chapter 403 in designating the region an "economic development area" to support the creation of the urban renewal plan.

### 2. Low and Moderate-income Family Housing

■ Opponents also argue the Plan violates the requirement that the City must provide or aid in the provision of public improvements related to housing and residential development. *Id.* § 403.22. Opponents contend this statutory provision requires the City to dedicate a percentage of the project revenue for low and moderate-income family housing. Iowa Code section 403.22(1) provides, in part:

> With respect to any urban renewal area established upon the determination that the area is an economic development area, a division of revenue as provided in section 403.19 shall not be allowed for the purpose of providing or aiding *in the provision of public improvements related to housing and residential development*, unless the municipality assures that the project will include assistance

for low and moderate income family housing.

*Id.* § 403.22(1) (emphasis added). This section clearly shows the City must provide assistance for low and moderate-income family housing *only* when an area is designated an economic development area "for the purpose of providing or aiding in the provision of public improvements related to housing and residential development." *Id.*

Opponents argue the public improvements are related to housing and residential development because they will affect both the existing and future residential areas. We have determined the phrase "related to" means "a reasonable nexus or logical connection with the development." *Knudson*, 622 N.W.2d at 51. Most public improvements primarily intended to facilitate industrial or commercial development will also incidentally affect the area residential and housing development. Application of Opponents' argument would lead to the result that all public improvement projects must include aid for low and moderate-income family housing because all such projects would appear, no matter how remote, to be "related to" housing and residential development. Whether the Plan is "related to" housing and residential development depends on the purpose for which the City designated the urban renewal area. Given the facts below, we find the link is insufficient to conclude the Plan is related to housing and residential development.

The City designated the Jordan Creek Urban Renewal Area as an economic development area for the purpose of developing commercial or industrial enterprises. The City *did not* designate the area as an economic development area to aid in the provision of public improvements related to housing and residential development. *See, e.g., Knudson*, 622 N.W.2d at 46 (the

city stated the area at issue was appropriate for public improvements related to housing and residential development and therefore was required to assure improvements would be included in calculating assistance for low and moderate-income families). A municipality is only required to provide assistance for low and moderate-income families when the economic area has been designated appropriate for public improvements related to housing and residential development. Because the City did not do this, it is not required to provide assistance for low and moderate-income family housing.

### 3. Purposes of the Urban Renewal Law

■ Opponents also contend the Plan does not further the purposes of the urban renewal law. Prior to 1985, the urban renewal law was aimed at the elimination of slum and blighted areas. In 1985, the legislature amended chapter 403 to provide a municipality with authority to adopt an urban renewal plan based solely on the existence of an economic development area. 1985 Iowa Acts ch. 66, § 1 (codified at Iowa Code § 403.2(3) (1987)). The purpose of extending the urban renewal powers of chapter 403 in this way was to stem economic decline and promote economic growth. *Brady v. City of Dubuque*, 495 N.W.2d 701, 707 (Iowa 1993). In amending chapter 403, the legislature explained,

> This bill provides that the city council can designate an area of the city as an economic development area and provide for its development for commercial or industrial enterprises in the same manner that blighted or slum areas of a city can be redeveloped under an urban renewal plan. An economic development area may include open land, blighted areas, slum areas, or any combination of those areas of land. The bill also authorizes a city to expedite the approval of

an urban renewal plan and a subsequent project involving an economic development area.

Leg. Servs. Bureau H.F. 494 (1985). The legislature further explained such an extension of coverage for urban renewal plans was warranted because "there exists in this state the continuing need for programs to alleviate and prevent conditions of unemployment and a shortage of housing." 1985 Iowa Acts ch. 66, § 1 (codified at Iowa Code § 403.2(3) (1987)). To address these conditions, a municipality has express powers to finance and pay for urban renewal projects to encourage and assist industrial and commercial enterprises in locating in the State and its municipalities. Iowa Code § 403.2(3). Among the type of activities an urban renewal project may include are the very activities provided for in the Plan—construction and improvement of infrastructure. *See id.* §§ 403.6, 403.12(1)(b), (f), (g).

In furthering the purposes of the urban renewal law, Opponents contend chapter 403 does not authorize public improvements related to retail development. This contention is not supported by the language of the statute. Iowa Code section 403.6 expressly vests municipalities with all of the necessary powers to carry out the purposes of the urban renewal law. *Id.* § 403.6. A municipality has authority to: undertake and carry out urban renewal projects within the urban renewal area; arrange and contract for the construction, reconstruction, furnishing, or repair of infrastructure; close, vacate, plan, or replan streets and roads; and plan or replan any part of the city. *Id.* A municipality may also plan and reconstruct buildings, parks, and water, sewer or drainage facilities. *Id.* § 403.12.

The City is promoting one of the main goals of the urban renewal law by the

Plan. The intended effect of the Plan is to encourage and assist various industrial and commercial enterprises in locating in the State of Iowa. Under the legislature's grant of power to municipalities and in accord with the purposes of the urban renewal law, the City is authorized to carry out all of the activities included in the Plan.

## B. Comprehensive Plan

■ Opponents also argue the Plan violates the provision in chapter 403 requiring urban renewal plans to conform to the "general plan" of the city as a whole. Though "general plan" is not defined, the parties have assumed "general plan" refers to the City's comprehensive plan. We have held urban renewal projects must be consistent with the comprehensive plan. *Knudson*, 622 N.W.2d at 55. Opponents argue both the Plan and urban renewal project, as outlined in the Agreement, must conform to the comprehensive plan. In so arguing, Opponents contend the potential activities of private developers in the renewal area must conform to the comprehensive plan. The district court disagreed and concluded "urban renewal project," as the term is defined in Iowa Code section 403.17(25), includes only the activities and undertakings of the City in the urban renewal area.

Here, the urban renewal project consists of the undertakings listed in the Jordan Creek Urban Renewal Plan. The Plan's proposed activities include the construction of public improvements within the urban renewal area, including a fire and EMS station, a police substation, public streets, water mains, sanitary sewers, storm water facilities, and bike and pedestrian trails, features, and parks. None of these activities violates the comprehensive plan. Because the shopping mall project is not an undertaking of the City, we do not consid-

er whether GGP's proposed shopping center conforms to the comprehensive plan.

Opponents quite correctly point out the Plan does not state what type of private commercial development, if any, will arise out of the City's infrastructure improvements. However, the Plan also does not condition the infrastructure improvements on the completion of the GGP shopping mall or any other private commercial development. There is undisputed evidence in the record the infrastructure improvements provided for in the Plan have been a part of the City's capital improvement plan for years, even as far back as 1991. As the record shows, the GGP proposal merely served to accelerate what the City had already anticipated and planned for in terms of infrastructure development. Moreover, on appeal we, like the district court before us, are not reviewing the Agreement, including the proposed shopping mall, between the City and GGP. In fact, the proposed site plan for the development of the shopping mall has not yet been presented to the City Council for approval. At that time, the shopping mall will be compared to the comprehensive plan. Because the urban renewal project at issue does not include the proposed shopping mall, we do not address whether the Project conforms to the comprehensive plan.

## C. Iowa Constitution

■ Finally, Opponents argue the Plan and the urban renewal project violate the prohibition against the use of public funds to pay for private enterprise. Iowa Const. art. III, § 31. Article III, section 31 of the Iowa Constitution provides "no public money or property shall be appropriated for local or private purposes unless authorized by the State General Assembly." *Id.* We must determine whether public funds are being used to support private pur-

poses. Opponents have the burden to show "there is an absence of all public interest in the purposes for which the appropriation" is made. *Richards*, 237 N.W.2d at 61.

■ Upon examination of the Plan, we find public money is being used to build or improve public infrastructures. The projects included in the Plan include constructing a municipal fire and EMS station, a municipal substation, various street improvements, water mains, sanitary sewers, storm water facilities, and public recreational facilities. None of the above projects could be characterized as private purposes. Rather, the Plan's objectives require an appropriation of public money to improve public infrastructures. This does not violate article III, section 31 of the Iowa Constitution.

The public infrastructure projects contemplated in the Plan will benefit not only the proposed GGP mall project, but more generally will benefit the City's citizens. Ultimately, the Plan will "more conveniently provide needed services and facilities of the commercial enterprises to municipalities and the residents of the municipalities." Iowa Code § 403.2(3). The Plan advances a public purpose and will not be invalidated because it benefits not only the public, but also potentially benefits a private developer. *See Knudson*, 622 N.W.2d at 53 (citing *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.*, 255 N.W.2d 89, 95 (Iowa 1977)); *Richards*, 237 N.W.2d at 60. In great part, the Plan is aimed at preventing economic decline and promoting economic growth. These purposes have been identified by the legislature as valid public purposes. Iowa Code § 403.2(3). We conclude the Plan does not violate article III, section 31 of the Iowa Constitution as it does not appropriate money for private purposes and it promotes valid public purposes.

## IV. Conclusion

On appeal, Opponents have repeatedly structured their arguments around the Agreement between the City and GGP. We emphasize we are not reviewing the legality of this Agreement, including the proposed shopping mall. We reviewed only the Plan and included public infrastructure improvement projects. The Plan violates neither the comprehensive plan nor the Iowa Constitution. The Plan is in conformity with Iowa Code chapter 403. Finding there were no genuine issues as to any material fact, we affirm the trial court's grant of summary judgment in favor of the City.

**AFFIRMED.**